**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,               CASE NO. 16-20062
                                 HON. DENISE PAGE HOOD

v.

JEROME HAMILTON, et al.,

        Defendants.

_____/

**ORDER DENYING DEFENDANT HAMILTON'S**
**MOTIONS TO SUPPRESS [#236, #239] AND GRANTING**
**IN PART AND DENYING IN PART GOVERNMENT'S**
**MOTION FOR ANONYMOUS JURY AND**
**SEMI-SEQUESTRATION [#218]**

## I.    Introduction

On October 31, 2016, a status conference pertaining to all Defendants was

conducted. On the same day, the Court held hearings on the following motions:

    A.    Defendant Jerome Hamilton's Motion to Suppress Evidence from
           Cellular Telephones [#236];

    B.    Hamilton's Motion to Suppress Evidence from Social Media [#239]; and

    C.    Government's Motion for Anonymous Jury and Semi-Sequestration
           [#218].

## II.    Hamilton's Motion to Suppress Evidence from Cellular Telephones

Hamilton asserts that: (1) the warrantless seizure of two telephones (an Apple

iPhone and Samsung S6 phone) at the time of his arrest were unlawful; and (2) the supporting affidavit for the warrant allowing the search of those telephones did not adequately demonstrate probable cause to believe that the evidence sought would be found on those telephones. This motion was fully briefed.

The Government asserts, and Hamilton does not deny, that the Apple iPhone belonged to Hamilton's girlfriend, Akili Walker, not Hamilton. According to the Government, (a) Akili Walker told them that the phone belonged to her and consented to a search of it; and (b) a subsequent search of the phone confirmed that it was her phone. Hamilton does not contest any of these assertions. That being the case, Hamilton did not have a legitimate expectation of privacy in the Apple iPhone and has no standing to challenge the seizure of the Apple iPhone. *See, e.g., United States v. Smith*, 263 F.3d 571, 581-82 (6th Cir. 2001) (a person may only challenge the seizure of an item if he had an "actual, subjective expectation of privacy" in it and "that expectation was a legitimate, objectively reasonable expectation"). The Motion to Suppress is denied as to the Apple iPhone belonging to Akili Walker.

The Samsung 6 phone belonged to Hamilton. The parties offer two different versions of the warrantless seizure of the Samsung 6 phone in conjunction with Hamilton's arrest, which indisputably was pursuant to an arrest warrant. According to the argument set forth by Hamilton in his motion and supporting brief, this is what

happened:

> Armed with a warrant for Mr. Hamilton's arrest, investigators arrived at his grandmother's house, outside of which a car he had been observed driving was parked, at approximately six o'clock in the morning of February 10, 2016. After they knocked, rang, and announced their presence, they were admitted to the house by his grandmother, Muriel Deborah Trent, a Michigan attorney.

> Mr. Hamilton had been asleep in a bedroom in the lower level of the house, but was awakened by the agents' arrival, and opened the door to the upper level just as the agents arrived at the top of the stairs leading down to it. He was immediately arrested, handcuffed, and seated in a chair in the same room he was standing in when he opened the door - an area referred to as a "family room."

> His female companion, who had also been asleep in the same bedroom as Mr. Hamilton, came into the room, and Mr. Hamilton, who was wearing only underwear, asked her to bring him some clothing. She returned to the bedroom, alone, and returned with a pair of pants and a shirt, which the agents assisted Mr. Hamilton in putting on.

> Shortly thereafter, his grandmother came downstairs and sat on the couch in the family room. It was during this period of time that one or more of the agents went into the bedroom and emerged with the telephones.

Dkt. No. 236, PgID 801.

> In its brief, the Government's asserted that:

> A team of ATF agents, Michigan State Police officers, and Detroit police knocked on the door at 6:05 a.m. Hamilton's grandmother, Deborah Trent, opened the door and allowed agents inside. Agents informed Trent of the warrant for Hamilton's arrest. Trent confirmed Hamilton was in the home and pointed to the basement where he was asleep. Michigan State Police officers roused Hamilton and his girlfriend, Akili Walker, from bed and arrested him. The officers also seized a Samsung S6

cellular phone on the bed and an Apple iPhone on a nightstand next to it.

Dkt. No. 260, PgID 1075-76.

Subsequent to Hamilton's arrest and the seizure of his Samsung 6 phone, the Government, based on an affidavit of FBI Agent Brandon R. Lighter ("SA Lighter"), applied for a search warrant for the Samsung 6 phone (and the Apple iPhone). Magistrate Judge Mona Majzoub issued a search warrant covering both the phones.

*1.     Seizure of the Phones*

Hamilton first challenges the seizure of the phones. The law is well-established that a warrantless search or seizure is "per se unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 357 (1967). One of those exceptions, which the Government relies upon in this case, is that an officer may perform a warrantless search and seizure of an individual incident to a lawful arrest. *See, e.g., United States v. Robinson*, 414 U.S. 218, 235 (1973); *Riley v. California*, 134 S.Ct. 2473, 2483 (2014) (no additional justification is required for a search incident to arrest and any seizure that results from that search); *United States v. Campbell*, 486 F.3d 949, 955 (6th Cir. 2007). The doctrine is rooted both in the need to disarm a suspect for the protection of officers but also to preserve evidence for use at trial. *Arizona v. Gant*, 556 U.S. 332, 339 (2009); *Robinson*, 414 U.S. at 234. It is "the government's

burden to establish its entitlement to the search incident to arrest exception; if the government fails to make such a showing, the evidence must be suppressed." *United States v. Hrasky*, 453 F.3d 1099, 1104 (8th Cir. 2006).

The parties agreed that, based on their conflicting versions of where the arrest occured, an evidentiary hearing would be necessary to determine what happened at the time of his arrest. Such an evidentiary hearing was held on October 31, 2016.

Hamilton asserts that because he was arrested under the circumstances he described (placed in handcuffs in a different room, away from the phones, to which he had no access), the officers' subsequent entry into–and search of–the room in which he was sleeping, and from which the phones were seized, was not incident to his arrest and was unconstitutional. Hamilton argues that the search incident to arrest doctrine includes temporal and physical limitations, namely that search incident to arrest may only include "the arrestee's person and the area 'within his immediate control' – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Gant*, 556 U.S. at 339 (citation omitted). "[I]t is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule." *Chimel v.*

*California*, 395 U.S. 752, 762-63 (1969).

The Government argues that the seizure of the phone was proper and constitutional because it was incident to Hamilton's arrest in the room where they woke and arrested him, with the phones within the reach and immediate control of Hamilton. Relying on *Chimel*, 395 U.S. at 763 (police may search and seize items within the "immediate control" of the arrestee). The Court finds that there is no evidence to support that argument. Consistent with Hamilton's argument, none of the Government's witnesses at trial testified that Hamilton was in bed or in the room where the phone was found by officers. All of the Government witnesses testified that they first saw Hamilton in a room just outside the room where the phones were found.

The Government next argues that, even if Hamilton were arrested outside of the bedroom he slept in, the officers had the right to search and seize items because, "even if that item is no longer accessible to the defendant at the time of the search," the arrestee "had the item within his immediate control near the time of his arrest, [and] the item remains subject to a search incident to an arrest." *Northop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001); *Gant*, 556 U.S. at 350 (limiting search area within control of arrestee at time of arrest to "evidence of the offense of arrest").

The Government also asserts that, even though Hamilton was arrested outside

of the bedroom, officers were justified in seizing the phones as an investigatory detention pending the issuance of a search warrant as the "exigencies of the circumstances demand[ed]" the seizure pending issuance of a warrant. Citing *United States v. Place*, 462 U.S. 696, 701 (1983); *Roaden v. Kentucky*, 413 U.S. 496, 505 (1973) ("Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action withou[t] prior judicial evaluation.").

The exigent circumstances the Government relies upon are the need to preserve evidence stored in electronic items pending the issuance of a search warrant. *See, e.g., Riley*, 134 S.Ct. at 2493-94 (police can seize and secure cell phones "to prevent destruction of evidence while seeking a warrant); *Illinois v. McArthur*, 531 U.S. 326, 331-32 (2001) (warrantless seizure permitted when there is "a plausible claim of specially pressing or urgent law enforcement need, *i.e.*, exigent circumstances"); *United States v. Bradley*, 488 F. App'x 99, 103-04 (6th Cir. 2012) (practice of seizing electronic items is permissible in light of the "inherently ephermal and easily destructible" nature of those items); *United States v. Gholston*, 993 F.Supp.2d 704, 710-12 (E.D. Mich. 2014) (collecting cases approving the seizure of cellular phones incident to lawful arrest).

The "practice of seizing an item based on probable cause in order to secure a

search warrant for it" is permissible to prevent loss or destruction of suspected contraband or evidence of a crime. Citing *United States v. Respress*, 9 F.3d 483, 486, 488 (6th Cir. 1993) (such an item cannot sit in evidence too long before law enforcement seeks a search warrant–the warrant must be pursued diligently). The Government cites the Supreme Court's recognition that cellular phones are vulnerable to evidence destruction even after a suspect is in custody because digital data can be "wiped" remotely; police may even take steps to protect that data by placing the phone in a Faraday bag or removing its battery. *See Riley*, 124 S.Ct. at 2486-87; *Place*, 462 U.S. at 701.

Hamilton counters that, even if the search that resulted in the discovery of the phones was proper, there was no probable cause to believe that the phones – or the data stored on the phones – constituted evidence of a crime, such that the seizure of the phones that day was unlawful. Citing *Soldal v. Cook County, Ill.*, 506 U.S. 56, 66 (1992). As the phones were seized from the home of his grandmother, an attorney, Hamilton contends that the Government cannot establish that "the exigencies of the situation demand[ed] it." Citing *Alman v. Reed*, 703 F.3d 887, 904 (6th Cir. 2013).

The Government argues that the Supreme Court has recognized that cell phones are "important tools in facilitating coordination and communication among members of criminal enterprises, and can provide valuable incriminating information about

dangerous criminals." *Riley,* 134 S.Ct. at 2493. The Government accurately states that both the indictment (which is referenced in the affidavit) and the affidavit include allegations that Hamilton participated in a violent criminal enterprise that involved communications, in part, through the use of cellular phones and other electronic devices. Dkt. No. 1, PgID 8; Dkt. No. 236, PgID 819-20 (¶ 10).

The Court concludes that officers had the right to seize the phones because exigent circumstances existed at that time of Hamilton's seizure on the arrest warrant. *Gholston*, 993 F.Supp.2d at 715 (the seizure of an item—such as a cellular phone or laptop that contains electronic evidence—pending the issuance of a warrant "is justified in order to prevent the imminent loss or destruction of evidence."). The Court denies Hamilton's Motion to Suppress Evidence from Cellular Phones on the grounds that the phones were illegally seized.

> 2.    *Search Warrant*

Hamilton argues that the search warrant issued by Magistrate Judge Majzoub was constitutionally deficient due to the absence of probable cause to support it. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). According to the Ninth Circuit, "[c]onclusions of the affiant unsupported by underlying facts cannot be

used to establish probable cause." *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (citation omitted). "An officer seeking a warrant must produce adequate supporting facts about the underlying circumstances to show that probable cause exists to support the particular search requested." *United States v. Hodson*, 543 F.3d 286, 293-94 (6th Cir. 2008).

Hamilton asserts that SA Lighter's "affidavit did not even attempt to describe the information upon which [his] conclusions were based" because there were no "supporting facts about the underlying circumstances," just conclusory statements. Hamilton suggests that the Magistrate Judge had no way to test the accuracy of SA Lighter's beliefs or conclusions – or the information upon which they were based. Citing *Gates*, 462 U.S. at 239 (the government did not "allow that official to determine probable cause"). Hamilton does not believe SA Lighter's affidavit included "sufficient information to support an independent judgment [by the Magistrate Judge] that probable cause exist[ed] for the warrant." *Whitely v. Warden*, 401 U.S. 560, 564 (1971).

Hamilton argues those deficiencies in the affidavit rendered it a "bare bones" affidavit that was insufficient to justify the issuance of the search warrant. Citing *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996) ("An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying actual

circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare bones' affidavit.").

The Government contends that the test for probable cause is whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Bass*, 785 F.3d 1043, 1049 (2015) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause means there are "reasonable grounds for belief," which requires more than mere suspicion but less than prima facie proof. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). With respect to cellular phones, "[t]he only probable cause necessary is that the phone itself is being used in connection with an offense or commonly used by someone committing the offense." *United States v. Sims*, 508 F. App'x 452, 460 (6th Cir. 2012).

The Government represents that SA Lighter's affidavit: (1) states that two phones were taken incident to Hamilton's arrest and were located on a table next to the bed in which Hamilton was found,[1] which gave reason to believe the phones belonged to him, Dkt. No. 236, PgID 821, ¶ 13; (2) establishes probable cause that Hamilton was involved in criminal activity, as he described Hamilton's role in forming the Rollin 60s Crips in Detroit and noted Hamilton's name on the list of

---

[1] As noted below, none of the testimony at the evidentiary hearing supported SA Lighter's representation that Hamilton was found in a bed – or even in the bedroom where the phones were found.

persons indicted by the grand jury for RICO and other criminal acts, Dkt. No. 236, PgID 818, ¶ 6 and PgID 820, ¶ 11; and (3) provides that, based on SA Lighter's experience of gang-related activity <u>and</u> his investigation of the Rollin 60s Crips, Hamilton and other Rollin 60s Crips members used cellular phones to plan acts of violence and other crimes, discuss criminal activity, coordinate the sale of illegal drugs, and further the goals of the Rollin 60s Crips. Dkt. No. 236, PgID 819-20, ¶ 10 and PgID 822 ¶ 16.

The Government asserts that all of that information established the required nexus between the items to be searched (the phones) and the evidence sought (information related to racketeering by members of the Rollin 60 Crips) and probable cause of criminal activity based on a totality of the circumstances. Citing *Bass*, 785 F.3d at 1048-49 (probable cause to search a cell phone found for a seized phone when the affidavit set forth that cellular phones were frequently used by the co-conspirators to call or text each other to conduct their criminal activity); *Gholston*, 993 F.Supp.2d at 719 (probable cause in the affidavit must contain sufficient facts to "support[] the inference that a search of a cell phone was likely to uncover evidence of criminal activity involving multiple participants"); *United States v. Jefferson*, 2015 WL 3576035, at **3-5 (E.D. Mich. June 5, 2015) (probable cause to search cellular phones of gang members charged with RICO violations in similar circumstances).

The Government refutes Hamilton's assertion that SA Lighter's affidavit is "bare bones." The Government asserts that both the indictment[2] and the affidavit describe the investigation of the Rollin 60s Crips and members' use of cellular phones to further criminal activities and supply sufficient particularized facts to link the place or item to be searched (the phones) with the criminal activities the Government was investigating, *Weaver*, 99 F.3d at 378, establishing a valid search warrant.

The Court agrees with the Government. Although SA Lighter misstated Hamilton's location when he was found and arrested, the search warrant application contained sufficient information to support an independent judgment of probable cause by the Magistrate Judge. *Whitely*, 401 U.S. at 564. The uniform testimony at the evidentiary hearing, including the testimony of all Government witnesses who saw Hamilton at the time of his arrest and Hamilton's grandmother, Muriel Deborah Trent, a Detroit attorney, was that agents first saw Hamilton in the area immediately outside the room where the phones were found. The Court concludes that the witnesses' testimony supports a finding that Hamilton had come out of the room in which the phones were located, and that is sufficient for the Court to establish probable cause.

---

[2]The indictment conclusively establishes probable cause that Hamilton committed the charged offenses. *See Kaley v. United States*, – U.S. – , 134 S.Ct. 1090, 1097 (2014) (an indictment returned by a grand jury "conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged"); *Liberetti v. Woodson*, 600 F. App'x 367, 372 (6th Cir. 2015) ("A recent indictment may also factor into the probable cause determination" for a subsequent search).

The Court also concludes that the information in the application established probable cause "that the phone itself [wa]s being used in connection with an offense or commonly used by someone committing the offense," *Sims*, 508 F. App'x at 560.

Specifically, the Court finds that the search warrant affidavit: (1) identified Hamilton as a member of the Rollin 60s Crips and as a person who had been indicted, along with eleven others, for a number of crimes, including RICO conspiracy; (2) noted Hamilton's arrest on a warrant a day earlier; (3) indicated that the phones were found near where Hamilton was found; and (4) set forth that, based on SA Lighter's training, experience, and research, gang-related criminal activities utilize cell phones to further their enterprise by talking, texting, emailing, and using social media to communicate, and that contact and other information is stored in, or may be extracted from, such cell phones, making the devices both an instrumentality of, and a storage device for, criminal activity.

The Court denies Hamilton's Motion to Suppress Evidence from Cellular Phones on the grounds that the search warrant issued by the Magistrate Judge was not constitutionally deficient.

## III.    Motion to Suppress Evidence from Social Media

In the course of the investigation which led to the return of the Indictment in this case, the Government sought, Magistrate Judges of this district issued, and

government investigators executed, search warrants for data from Hamilton's social media accounts, as follows: (a) by Magistrate Judge David Grand on August 8, 2013, under Docket No. 13-mc-51200 (Facebook); (b) by then-Magistrate Judge Laurie Michelson on December 16, 2013, under Docket No. 13-mc-51200-C (Twitter); (c) by Magistrate Judge Mona Majzoub on August 26, 2014, under Docket No. 13-mc-51200-E (Facebook); and (d) by Magistrate Judge Elizabeth Stafford on February 1, 2016, under Docket No. 13-mc-51200-I (Facebook). *See* Dkt. No. 239, Exs. 1-4.

The Government intends to introduce evidence acquired and derived from the searches executed pursuant to those four search warrants (and two searches of Mills' Facebook accounts).[3] Hamilton asserts that he had a reasonable expectation of privacy in the data seized/discovered as a result of those searches, which he asserts were in violation of his Fourth Amendment rights because the search warrants issued were "overbroad" and insufficiently "particular."

In *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (footnote omitted), the Supreme Court addressed the "particularity" requirement of the Fourth Amendment as follows:

---

[3]Mills joined in Hamilton's Motion to Suppress Evidence from Social Media. The Government executed two search warrants on Mills' Facebook account, but Mills did not offer information or argument about the content of the search warrants relative to his Facebook account. The Government and the Court have presumed Mills is challenging those two search warrants.

The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized." The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

As it relates to electronic data, the 2009 amendments to Rule 41 specifically authorize a two-step process, in which a warrant may provide for the wholesale seizure of stored data, and its later examination for specific information that is subject to seizure and retention as evidence - all subject, of course, to the strictures of the Fourth Amendment. Rule 41(e)(2)(B) now provides in full as follows:

> **Warrant Seeking Electronically Stored Information**. A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

In the Sixth Circuit, a court has recognized that, "given the unique problem encountered in computer searches, and the practical difficulties inherent in implementing universal search methodologies, the majority of federal courts have eschewed the use of a specific search protocol." *United States v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011) (footnote omitted). The *Richards* court upheld a search

warrant under "the Fourth Amendment's bedrock principle of reasonableness" after finding that the warrant "did not permit a free-ranging search." *Id.* at 542. Hamilton argues that the Facebook search warrants in this case exhibited a complete failure to limit or control the conduct of the agents empowered to conduct the searches and seizures and "demonstrate a wholesale abandonment of judicial oversight." Dkt. No. 239, PgID 875.[4]

Central to Hamilton's argument is the fact that, in each warrant, the probable cause finding and the authorization to search for and seize items: (1) only stated "See Attachment B;" and (2) Attachment B listed every part of the account information and data attributable to his Facebook account(s). Hamilton asserts that the authorized searches were overbroad because they failed in any way whatsoever "to limit, guide, or control the seizures they authorized." Hamilton states that, while "it appears that the drafters of the warrants and the applications may have intended[5] to include some words of limitation in the documents to be submitted to the magistrates, . . . the fact is that they did not, and the warrants issued by those magistrates specifically authorized the search for and seizure of anything and everything in the archives." Dkt. No. 269, PgID 1225.

---

[4]This argument demonstrates that, even if the search was illegal, the good faith exception applies – because it was the magistrate judge(s) who erroneously issued the search warrants, not the agents.

[5]This also supports a finding that the good faith exception applies.

Hamilton claims that <u>the magistrate judge failed</u>[6] to: (1) identify the basis for granting the authority to search, or (2) limit what the officers executing the warrant were permitted to seize; rather, the warrants allowed "general rummaging," which is prohibited by the particularity requirement. Hamilton also asserts that the warrants at issue "fail to incorporate expressly the affidavit into the warrant's description of the items to be searched for and seized if found." Citing *United States v. Tracey*, 3d Cir. 2010). *See also Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004), where the Supreme Court stated:

> The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents. . . . We do not say that the Fourth Amendment prohibits a warrant from cross-referencing other documents. Indeed, most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant. . . . But in this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant. Hence, we need not further explore the matter of incorporation.

Hamilton argues that the "Facebook affidavits" fail to satisfy the requirements of *Groh*.

Each of the affidavits in support of a search warrant for Hamilton's Facebook accounts contains the following language (found in Paragraph 56 of the first affidavit, Paragraph 51 of the second, and Paragraph 75 of the third):

---

[6]This also supports a finding that the good faith exception applies.

> I anticipate executing this warrant under the Electronic Communications
> Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and
> 2703(c)(l)(A), by using the warrant to require Facebook to disclose to the
> government copies of the records and other information (including the
> content of communications) particularly described in Section I of
> Attachment B. Upon receipt of the information described in Section I of
> Attachment B, government authorized persons will review that information to locate the it

It is undisputed that none of the affidavits, applications, or warrants contains a Section II of Attachment B. Hamilton argues that the absence of what would, presumably, be some limiting descriptors in Section II permits the general searches that the Fourth Amendment prohibits.

The Government first notes that Hamilton does not dispute the existence of probable cause in support of each warrant. The Government acknowledges that Attachment B to the Facebook warrants failed to specify what records could be retained, though it asserts that the warrants state what could be searched. The Government argues that the absence of specific items to be seized does not in itself invalidate the warrant.

The Government admits that the relevant information regarding the criminal activity charged could have been found anywhere within the Facebook (and Twitter) accounts (as it believes there is no specific area information is kept in those accounts), *United States v. Adjani*, 452 F.3d 1140, 1150 (9th Cir. 2006), but argues that the warrants limited the information to the time period during which the Rollin 60s Crips

operated in Detroit. The Government contends that this time limitation made the breadth of the warrants reasonable. Citing *Bass*, 785 F.3d at 1050; *Richards*, 659 F.3d at 541 (quoting *United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004) ("The proper metric of sufficient specificity is whether it was reasonable to provide a more specific description of the items at that juncture of the investigation.").

The Government further suggests that the scope of each warrant was limited because the warrant itself expressly referred to, and relied on, the applicable supporting affidavit. The Government contends the affidavits limited the material agents could seize to fruits or evidence of racketeering, violent crimes in aid of racketeering, illegal firearms sales, and drug trafficking. *See, e.g.,* Dkt. No. 239, PgID 904 (Paragraph 57). "The particularity requirement may be satisfied through the express incorporation or cross-referencing of a supporting affidavit that describes the items to be seized, even though the search warrant contains no such description." *United States v. Rarick*, 636 F. App'x 911, 914 (6th Cir. 2016) (quoting *Richards*, 659 F.3d at 537). The Government asserts that there was "a sufficient cross-reference of the affidavit," *Rarick*, 636 F. App'x at 915 (citing *Groh*, 540 U.S. at 557-58), because the supporting affidavit, incorporated by reference in the warrant, eliminated the agents' "free rein [sic] to essentially do away with the particularity requirement" and

seize any item. *Rarick*, 636 F. App'x at 914-15 (citation omitted).[7]

The Government argues that in each of the warrant affidavits, the agents described the formation of the Rollin 60s and summarized how the gang derived its income from drug sales, gun sales, and robberies, and routinely engaged in shootings, assaults, and homicides. The agents explained that, in their training and experience, the Rollin 60s and related gangs use Facebook to discuss gang business and to further the criminal objectives of the enterprise. The agents identified the scope of the investigation into the Rollin 60s and listed the statutes the Rollin 60s were believed to have violated, including racketeering, violent crimes in aid of racketeering, and conspiracy to distribute illegal narcotics.

The Government argues that those facts are specific and explain why each Facebook account requested likely contained evidence of these historical, and ongoing, crimes. *See, e.g.,* Dkt. No. 239, PgID 897-99 (¶¶ 23–28 – Hamilton account "manedavis") (¶¶ 29–32 – Hamilton account "usk.staccz"); Dkt. No. 263, PgID 11-76-77 (¶¶ 44–47 – Mills account). The agents noted that Hamilton's account "usk.staccz" account had multiple pictures of him with other Rollin 60s members wearing gang paraphernalia and flashing gang signs. Dkt. No. 239, PgID 899 (¶ 32). The

---

[7]It is clear that the affidavits – absent Section II of Schedule B – were attached to each of the search warrant applications, but it is not clear whether such affidavits were attached or accompanied the search warrants themselves.

Government concedes that Attachment B did not include the language that listed the information to be seized (Part II), but it argues that Part I of Attachment B was included and detailed the information to be disclosed by Facebook.

The Government contends that purpose of the particularity requirement is to prevent general searches "that would let officers seize one thing under a warrant describing another," *United States v. Ford*, 184 F.3d 566, 575 (6th Cir. 1999), but the degree of specificity required is "flexible" and depends on "the crime involved and the types of items sought." *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001). The Government suggests this is especially "true in the unique, and evolving, area of electronic data on computers, cellular phones, and the internet." Dkt. No. 1135 (citing *Richards*, 659 F.3d at 537–40). Relying on *Bass* and *Richards*, the Government asserts that:

> [F]ederal courts have rejected "most particularity challenges" to warrants authorizing the search of personal or business computers. *United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015); *Richards*, 659 F.3d at 539. Since "criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity…a broad, expansive search of [the computer] may be required." *Richards*, 659 F.3d at 538 (quoting *United States v. Stabile*, 633 F.3d 219, 237 (3d Cir. 2011)). For that reason, a "cursory review of each file" is required. *United States v. Stabile*, 633 F.3d 219, 239 (3d Cir. 2011).

Dkt. No. 263, PgID 1136.

Hamilton counters that "the warrants contained no limitation restricting the

scope of the authorized seizures, and thus did allow the kind of 'free-ranging search' forbidden by the Fourth Amendment." Dkt. No. 269, PgID 1226. Hamilton suggests that it is this failure which distinguishes the warrants at issue from the warrant upheld in *Richards*, where the court observed that "[t]he scope of the warrant was restricted to a search for evidence of child pornography crimes and did not permit a free-ranging search." Id., at 541-542. Hamilton asserts that the fact that investigators may have intended to seek more limited authority is not relevant.

As noted above, the Government has argued that the scope of the warrants, through the supporting affidavits, was limited to evidence of racketeering, violent crimes in aid of racketeering, illegal firearms sales, and drug trafficking. Dkt. No. 239, PgID 904 (Paragraph 57). Hamilton asserts that the reference to the affidavits is not helpful because they profess to search and seize in accordance with Attachment B — a document that contains no more limitations than the warrants.

The Government proposes that, even if the warrants were overbroad, the remedy is to "sever the overbroad portions of the warrant from those portions that are sufficiently particular." *Ford*, 184 F.3d at 578. The Government argues that because the scope of crimes was identified in the warrant, any evidence of crimes outside of those crimes listed would be suppressed, not the evidence of the crimes specified in the warrant. Citing *Rarick*, 636 F. App'x at 915. Hamilton counters that, because the

warrants at issue have no limiting descriptors, they are not severable. *United States v. Galpin*, 720 F.3d 436, 448 (2d Cir. 2013) (quotation and citation omitted) ("severance is not an available remedy for an overbroad warrant 'where no part of the warrant is sufficiently particularized, where no portion of the warrant may be meaningfully severed, or where the sufficiently particularized portions make up only an insignificant or tangential part of the warrant").

The Court concludes that the search warrants issued with respect to Hamilton's (and Mill's) Facebook accounts were sufficiently particular and not overbroad. The Court notes that it is unclear why Schedule II to Attachment B was missing from the search warrant applications and the search warrants, and the Court does not endorse the oversight of the prosecutors or the Magistrate Judge's with respect to those absences. But, even in the absence of Schedule II to Attachment B, the Court notes that: (1) Hamilton does not contest the Government's contention that probable cause supported each warrant; (2) the search warrant applications and the search warrants state what could be searched; (3) the information to be searched was limited to a specific time period (January 1, 2012 to the date of the search warrant, August 8, 2013); (4) each warrant references the corresponding search warrant application, which includes an affidavit that limits the material agents could seize to information related to specific crimes, as follows:

fruits or other evidence of a crime involving violations of Title 18 United States Code, Section 1962 (Racketeering Influenced Corrupt Organizations Act), and Title 18, United States Code, Section 1959 (Violent Crimes in Aid of Racketeering), Title 18, United States Code, Section 922(a)(1)(A) (Illegal Dealing in Firearms), Title 21, United States Code, Sections 841(a)(1); 846 (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances).

*See, e.g.,* Dkt. No. 239, PgID 904 (Paragraph 57).

Hamilton also challenges the warrants related to his Twitter account. He raises the same issues for this account as he did for the Facebook accounts, except he acknowledges that Attachment B includes a final sentence with some words of limitation: "Only those items that are consistent with the violations stated under Titles 18 and 21 in the application will be seized for purposes of the investigation." (emphasis added). Hamilton correctly argues that the Application for Search Warrant for the Twitter account does not identify any Title 21 references, as the application itself only references violations of 18 U.S.C. 1959 and 1962. Hamilton concedes that Paragraph 72 of the affidavit in support of the application refers to both Title 18 and 21 but accurately argues that the affidavit is not cross-referenced in Attachment B of the warrant (though the affidavit is encompassed by the "application," which Attachment B does reference).

The Government asserts that the affidavit prepared by FBI Special Agent Nick Zambeck ("SA Zambeck") explained how Rollin 60s gang members use Twitter to

disclose their affiliation with the gang and to conduct "gang business"—such as drug trafficking and violent crimes in aid of the enterprise. Dkt. No. 239, PgID 982-83 (¶¶ 8, 9, 12). SA Zambeck also set forth facts to explain why Hamilton's Twitter account would have evidence of gang activity, including that his public profile showed a picture of Hamilton in Rollin 60s gang colors with the caption "#RSC." Dkt. No. 239, PgID 986 (¶ 32). SA Zambeck identified gang-related public tweets by Hamilton as well, including that Hamilton tweeted on June 10, 2013 that he "called off worc cus its HOOD DAY"—the nationally recognized birth date for the Crips street gang. Dkt. No. 239, PgID 986 (¶ 35).

Based on those facts, SA Zambeck sought permission to search the Twitter accounts of specific Rollin 60s members for records relating to drug distribution, illegal guns, and criminal conspiracies. Dkt. No. 239, PgID 993 (¶ 72); Attachments A and B. SA Zambeck specified that those records included photos, wall posts, lists of "friends," videos, pictures and other evidence that the gang members used their Twitter accounts in the manner that SA Zambeck had described in the affidavit. *Id*. SA Zambeck attached to the Twitter search warrant application the entirety of Attachment A (the Twitter accounts to be searched) and Attachment B (the items to be seized), which were consistent with "the violations stated under Titles 18 and 21 in the application." *Id*.

For the same reasons the Court concluded that the search warrants issued with respect to Hamilton's (and Mill's) Facebook accounts were sufficiently particular and not overbroad, the Court concludes that the search warrant issued with respect to Hamilton's Twitter account was sufficiently particular and not overbroad. And, as Defendant concedes, Attachment B to the Twitter search warrant specifically cross-referenced the search warrant application. *See, e.g.,* Dkt. No. 239, PgID 904 (Paragraph 57) and PgID 977 ("Only those items that are consistent with the violations stated under Titles 18 and 21 in the application will be seized for purposes of the investigation").

The Court denies Hamilton's Motion to Suppress Evidence from Social Media.

## IV.    Government's Motion for an Anonymous Jury and Semi-Sequestration

The Government argues that protective measures *vis a vis* the jury are necessary in this case, "where the defendants have been charged with a RICO conspiracy based on their participation in the Rollin 60s Crips, a violent street gang involved in crimes like murder, assault, and witness intimidation." The Government maintains that those violent propensities are grounds for empaneling an anonymous jury to protect jurors from any threats, harm, or harassment.

Hamilton argues that "[a]n anonymous jury rises the specter that the defendant is a dangerous person from whom jurors must be protected, thereby implicating the

defendant's constitutional right to a presumption of innocence." *United States v. Ross*, 33 F.3d 1507, 1511 (11th Cir. 1994). *See also United States v. Shryock*, 342 F.3d 948, 971 (9th Cir. 2003) ("anonymous juries may infer that the dangerousness of those on trial required their anonymity, thereby implicating defendants' Fifth Amendment right to a presumption of innocence.").[8]  The Government did not file a reply.

The Sixth Circuit has approved the use of an anonymous jury where a district court (1) "conclud[es] that there is strong reason to believe the jury needs protection," and (2) "tak[es] reasonable precautions to minimize any prejudicial effects on the defendant[s] and to ensure that [their] fundamental rights are protected." *United States v. Lawson*, 535 F.3d 434, 439 (6th Cir. 2008) (quoting *United States v. Talley*, 164 F.3d 989, 1001 (6th Cir. 1999)).  *See also* 28 U.S.C. § 1863(b)(7); E.D. Mich. Juror Selection Plan, 13-AO-016, § (t)(3).  The *Lawson* court stated that juror anonymity is especially appropriate "when the case involves very dangerous defendants who were participants in large-scale organized crime, and who participated in mob-style killings and had previously attempted to interfere with the judicial process." *Lawson*, 535 F.3d at 439. That court said that juror anonymity is also appropriate in cases where "there have been allegations of dangerous and unscrupulous conduct by the defendant, coupled with extensive pretrial publicity." *Id*.  As Hamilton notes, the

---

[8]The only 6th Circuit cases cited by Hamilton in his response were cases cited by the Government.

critical basis for empaneling an anonymous jury is "that there is a strong reason to believe the jury needs protection" from the Defendants. *Id.*

The Government argues that this case is like *Lawson*, in that Defendants are "participants in large-scale organized crime." The allegations in the Superseding Indictment do suggest Defendants were participants in large-scale organized crime. As it relates to the need for juror protection, the Superseding Indictment alleges many instances of violence, including multi-person armed robberies, firebombings, and murder. *See* Dkt. No. 194, PgID 661-67. The Government also asserts that many of the Defendants face significant jail sentences, in some instances mandatory life imprisonment, which allows for the possibility "that they would resort to extreme measures to influence the outcome of their trials." *United States v. Warman*, 578 F.3d 320, 344 (6th Cir. 2009). The Government does not provide calculations that show mandatory life imprisonment but that representation is not disputed in the briefing.

Hamilton argues that the Government's motion is, in essence, predicated on the kind of case it is rather than any actual conduct of he and his co-defendants. Hamilton contends that the Government's argument about the need to protect the jurors is only theoretical, as the Government does not "provide evidence indicating that intimidation is likely." *United States v. Mansoori*, 304 F.3d 635, 651 (7th Cir. 2002).

Hamilton states that the facts of *Lawson* and *United States v. Deitz*, 577 F.3d

672 (6th Cir. 2009) (another case cited by the Government) are distinguishable from the instant case.  In those two cases, "the FBI had corroborated allegations from a confidential informant that the defendants 'were contracting to arrange the murder of witnesses, court officers, and prosecutors." *Lawson*, 535 F.3d at 439; *Deitz*, 577 F.3d at 684. *See also United States v. Warman*, 578 F.3d 320, 343 (6th Cir. 2009); *Talley*, 164 F.3d at 1001 ("because Talley had allegedly tried to interfere with the judicial process by attempting to have a witness in his criminal case killed, it was not unreasonable to assume that he may try to further interfere with the judicial process").

Hamilton also notes that there has been very limited pretrial publicity in this case.  The Government acknowledges that there has not been extensive pretrial publicity but suggests that there has been "plenty of media attention," Dkt. No. 218, PgID 753, which presumably will continue and likely increase as the case moves toward trial.  The Government suggests that Hamilton's prior trials for the murder of a restaurant manager will contribute to media interest in this case. Citing *United States v. Norwood*, No. 12-20287, 2014 WL 1796644, at *2 (E.D. Mich. May 6, 2014) ("Continued significant media attention is likely as this case proceeds through trial."). The Government relies on the alleged events at a RICO conspiracy trial related to a gang in Flint, where jurors apparently were followed home by people during trial, to assert that this case presents similar concerns.  In that case, the Court found that "the

Government has not presented evidence that Defendants were involved in the alleged incidents." *Norwood*, No. 12-20287, Dkt. No. 761, PgID 4187 (n.10). At this point, there is no evidence that any Defendant has taken action against any person(s) since he or she was indicted in this case.

The Government argues that Defendants have "attempted to interfere with the judicial process," *Lawson*, 535 F.3d at 439, by threatening a potential witness and demanding to see his statement to law enforcement. Citing Dkt. No. 194, PgID 667 (Para. 37 - the alleged threat by Hamilton against Brandon Cincy Kennedy). Hamilton argues that this threat that he allegedly made, even if accepted as true, does not support a finding that there is a need for jury protection in this case.

The Court finds that the Government's argument is misplaced for two reasons. First, the threatened "potential witness" was not a "potential witness." The threatened person was Defendant Brandon Cincy Kennedy – and the statement that Defendant gave was not as a witness but as a participant in the crime at issue. Second, the "threat" set forth in that paragraph is not express and, arguably, no threat should be inferred from the allegation, as that paragraph provides:

> 37) On or about February 1, 2014, JEROME HAMILTON demanded a copy of the statement BRANDON KENNEDY provided to law enforcement after his January 31, 2012 arrest for attempted armed robbery in order to determine whether KENNEDY had "snitched" on DARRIYON MILLS to police.

*Id.*

Hamilton suggests that the Court should not take the Government up on its suggestion to tell jurors that they are to be anonymous (or innominate) to protect them "from being harassed by the media" because: (1) that is lying to the jury, as there has been little media coverage so far; (2) anonymous juries are at odds with traditional practices in this country, citing Ephraim Margolin & Gerald F. Uelmen, *The Anonymous Jury: Jury Tampering By Another Name?*, 9 CRIM JUST. 14 (1994) ("Juror anonymity is an innovation that was unknown to the common law and to American jurisprudence in its first two centuries."); (3) it would impair his ability to conduct a reasonably effective *voir dire* and intelligently exercise peremptory challenges (but he does not explain why either of those things are true);[9] and (4) the effect of a truly anonymous jury undercuts the presumption of innocence to which he is entitled.

The Government argues that any potential prejudice to Defendants that might

---

[9] In support of this claim, Hamilton cites a Ninth Circuit case, *Shyrock*, 342 F.3d at 971 ("the use of an anonymous jury may interfere with defendants' ability to conduct voir dire and to exercise meaningful peremptory challenges"); and a Seventh Circuit case, *Mansoori*, 304 F.3d at 650 (citations omitted) ("Juror anonymity . . . deprives the defendant of information that might help him to make appropriate challenges–in particular, peremptory challenges–during jury selection."). Neither of those cases specifies why having an anonymous jury interferes with the ability to make meaningful peremptory challenges. One court has stated that, "[t]he juror might turn out to be related to a party or a witness (yet not disclose this on voir dire) or to live in a neighborhood whose residents have demographic characteristics predictive of their likely response to the issues in the case." *United States v. DiDomenico*, 78 F.3d 294, 301 (7th Cir. 1996).

exist because of any presumptions associated with maintaining anonymity of the jurors can be eliminated by: (1) "conduct[ing] voir dire designed to uncover bias" as to the issues and the Defendants themselves, *Talley*, 164 F.3d at 1001-02; or (2) "provid[ing] the jury a neutral and non-prejudicial reason for requiring that it be anonymous, so that jurors will refrain from inferring that the anonymity was necessary due to the character of the defendant." *Id.* at 1002; *Lawson*, 535 F.3d at 440 (discussing a cautionary instruction that "premise[s] anonymity on the need to prevent the jurors from being harassed by the media, as the district court did in *Talley*, 164 F.3d at 1002 n.7"); *Deitz*, 577 F.3d at 685-86.

The Government concludes that its request for an anonymous jury does not infringe on Defendants' Sixth Amendment rights. The Government argues that the Sixth Amendment "provides defendants with a right to a public trial by an impartial jury, but it does not guarantee a right to a public jury," such that Defendants do not have a right to know jurors' identities. *Lawson*, 535 F.3d at 440.

Hamilton requests that, in the event the Court is persuaded that any anonymity of the jurors is necessary, the Court utilize the "semi-anonymous" jury method Judge Borman recently used. *See United States v. Franklin Gonzalo Sierra-Rodriquez, et al.*, Case No. 10-20338, Dkt. No. 357, PgID 3481 ("In the semi-anonymous scenario, Defendants' counsel are aware of the jurors names to assist them in jury selection, but

cannot share the names of jurors with their clients or anyone else."). The Government has not responded to this proposal.

The Government also requests that the Court order semi-sequestration of jurors in this case to protect them from threats, harm, or harassment. The semi-sequestration requested consists of a secure escort for the jurors to and from a designated parking spot near the courthouse during trials, a protective measure that has been utilized in this district. *See* Case No. 10-20338, Dkt. No. 378; Case No. 14-20119, Dkt. No. 232. The Court notes that those two orders are included with the briefing materials for this motion, but the orders themselves contain no relevant analysis. Hamilton asserts that the Government has not demonstrated the need for semi-sequestration and the circumstances of this case (at least so far) do not require such measures. Hamilton states that if the circumstances of trial demonstrate that such protection is necessary, the Court can implement those measures.

Having weighed the parties' arguments and the events alleged in this matter, the Court concludes that the allegations in the Indictment are indicative of behavior that supports the application of some protective measures but not to the extent the Government requests. The Court finds that an anonymous jury is not warranted in this case, but it will allow a semi-anonymous jury and semi-sequestration of the jury.

The Government's Motion for an Anonymous Jury and Semi-Sequestration is

granted in part and denied in part. Specifically, the Court holds that Hamilton's (and other Defendants') counsel may know the juror names to assist them in jury selection, but defense counsel cannot share the names of the jurors with their clients or anyone else. The Court also holds that semi-sequestration in this case shall consist of providing the jurors with a secure escort to and from a designated parking spot near the courthouse during the trial.

## V.     Conclusion

Accordingly,

IT IS ORDERED that Defendant Jerome Hamilton's Motion to Suppress Evidence from Cellular Telephones [#236] is **DENIED**.

IT IS FURTHER ORDERED that Hamilton's Motion to Suppress Evidence from Social Media [#239] is **DENIED**.

IT IS FURTHER ORDERED that the Government's Motion for Anonymous Jury and Semi-Sequestration [#218] is **GRANTED IN PART** and **DENIED IN PART**.

IT IS ORDERED.

S/Denise Page Hood                              
Denise Page Hood
Chief Judge, United States District Court

Dated:  April 11, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 11, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager