United States District Court
Eastern District of Michigan

United States of America,

      Plaintiff,

v.

D-1 Jerome Adam Hamilton,

      Defendant.
_____ /

Hon. Denise Page Hood

Case No. 16-20062

## Government's Sentencing Memorandum

Defendant Jerome Hamilton, a.k.a. "Maniac," formed the Detroit chapter of the Rollin 60s Crips street gang. Together with co-defendant Darriyon Mills, the two men led this gang on a ten-year reign of terror over the west side of Detroit—one that left a sea of victims in its wake. As a founding member of the gang, Hamilton both directly and indirectly took part in murders, robberies, carjackings, drive-by shootings and a firebombing. (R. 194: SS Ind., counts 1-5, Overt Acts 12-15, 17). Hamilton also sold drugs, the profits from which were funneled back to the Rollin 60s' leadership in order to fuel still more violence. (R. 194: SS Ind.; Drug Trafficking Overt Acts 75, 84; PSR at ¶¶ 15, 108, 117).

1

Hamilton has pleaded guilty to count one, RICO conspiracy, and count five, using and carrying a firearm during and in relation to a crime of violence causing death, 18 U.S.C. § 924 (j). (R. 194: SS Ind.; Rule 11 Plea Agreement). His guidelines are life (43/III), followed by a ten-year mandatory minimum on count five. (PSR ¶199). Pursuant to the Rule 11 plea agreement, however, the parties have agreed that in exchange for his guilty plea in this matter, Hamilton's combined sentence in the case may be no less than 360 months' imprisonment, and no more than 420 months' imprisonment. (Rule 11 Plea Agreement, p. 8). In order to punish Hamilton, protect society from his seemingly insatiable appetite for violence, and deter others from committing similar crimes, the government requests a sentence of 420 months' imprisonment.

## Background

In 2008, Hamilton began recruiting members to join the Detroit chapter of the Los Angeles-based Rollin 60s Crips. In Hamilton's effort to cultivate his following, he sought out young and impressionable teens who were willing to commit any crime in order to belong to this family of violence. (PSR ¶18). In the course of growing the gang, Hamilton and others formed "lines" of membership. (*Id.* ¶15). As a "Big Homie,"

Hamilton—primarily using social media websites like Facebook—directed fellow gang members to commit armed robberies, carjackings (Overt Acts 7-9, 25-26, counts 6-7), and multiple murders (Overt Acts 13-15, counts 2-5). Hamilton would then decide a member's standing within the gang based on the extensiveness of his criminal activity: the greater the bloodshed, the higher one's rank. (R.194: SS Ind., 663, 664, 667).

As part of his leadership role, Hamilton also expected active participation and loyalty from his Rollin 60s members. For example, in March of 2013, he dismissed as inconsequential a fellow Rollin 60's participation in a firebombing because the gang member had not shot anyone. (*Id.* at Overt Act 33, 667). A year later, he demanded fellow gang member Brandon Kennedy provide Hamilton with a copy of his post-arrest statement to law enforcement in order to determine if Kennedy had snitched on other Rollin 60s members.

Even when he was in jail, Hamilton's influence over the gang did not diminish. In 2008 and 2009, while facing murder charges in state court, Hamilton placed Mills in charge of the gang. In Hamilton's absence, but with his blessing, Mills issued commands for violence, drug trafficking, and orders for members to pay dues at Rollin 60s' meetings.

3

(PSR at ¶21). For those who failed to comply, Mills maintained Hamilton's hierarchical sense of order by issuing "violations," consisting mostly of physical abuse. (*Id.*).

Following Hamilton's March 2010 acquittal for murder, he wasted no time resuming his leadership role for the Rollin 60s—this time encouraging violence against two enemy gangs. He and Mills ordered their fellow Rollin 60s to kill the head of the Playboy Gangster Crips. (R. 194: SS Ind.; Overt Acts 12-13, counts two and three). When they found him, the Rollin 60s shot and critically wounded the rival leader. (*Id.*; PSR ¶¶45-47). Early the next morning, the Rollin 60s continued their violent spree by throwing a brick through a window and attempting to firebomb a house they believed was occupied by a rival Blood member. (R. 194: SS Ind.; Overt Acts 14-15, counts four and five). The victims of the firebombing were not gang members at all, but a family with a disabled son who slept in the living room a few feet from where the Molotov cocktail landed. In exchange for their viciousness, Mills and Hamilton elevated the rank of the participants of this arson thereby giving them more responsibility to direct other, lower-ranking members to commit more violence. (*Id.*).

4

Then, on August 8, 2011, Hamilton took part in a drive-by shooting which claimed the life of an unintended target—a father of three children who was fixing his car in front of his mother's house. Hamilton authored this retaliatory plot after a fellow Rollin 60 complained of a dispute he and his brother had with some young men in the neighborhood. Hamilton and three fellow Rollin 60s then drove around until they found the object of their violence. Unfortunately, their target was playing basketball on a residential street filled with children and adults. Undeterred by the presence of innocent bystanders, Hamilton drove through the crowd with his fellow gang members hanging out the window firing their guns indiscriminately. They left 19 shell casings and a young man's life in their wake. (R. 194: SS Ind., counts eight and nine, Overt Acts 29-31).

Hamilton's role in the Rollin 60s was not limited to Detroit. He reported to leadership in Texas and connected with Crips wherever he went. Indeed during the time Hamilton lived outside Michigan, when he was purportedly in college, he used social media to traffic narcotics, coordinate violent acts, and preserve his position as leader of the Rollin 60s in Detroit. In short, his leadership of the gang and his fierce reputation were national:

5

 (June 2014 – Minnesota)

 (September 2015 – Nashville)

 (May 2015 - Atlanta)

Even as his co-defendants began maturing and withdrawing from the gang, Hamilton remained undeterred from his life as a Rollin 60. On February 10, 2016, when agents arrested Hamilton for this crime, he had marijuana in his pants and a phone containing more orders for violence[1] as well as a January 2016 video of him on a hover board, smoking marijuana with a gun in his waistband:

---

[1] ROI-218:
- February 5, 2016—Hamilton sent the following text message to a fellow Rollin 60: "Yayo n all them niccas its greenlight im bussin on them niccas wen i see em."
- February 5, 2016—Hamilton then solicited a fellow gang member (S-1) to kill someone who had stolen Hamilton's money: "A I need ANY info u can get on that lil bitch ass boy… DOIN somn right now but he ran off n just let me know he dead 1 way or another…" S-1 responded: "Did u give him money." Hamilton replied: "Obviously fool that's wat the whole thing about." S-1 replied: "U put them niccas on a play and dey burnt u…Call me I think I got a plan."
- February 6, 2016—Hamilton texted a fellow Big Homie: "Need it done on crip im on some shit wen I get bacc ill take everybody out that fucc w them niccas…Let niccas know."

7



# Argument

### A.) 18 U.S.C. §3553(a)(1) & (a)(2)(A): THE NATURE AND CIRCUMSTANCES OF THE OFFENSE, THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT.

Section 3553 instructs the Court to take into account the nature and circumstances of the offense and the history and characteristics of the defendant. In this case, a sentence of 35 years adequately addresses these sentencing considerations.

While the defendant is only 24 years old, the last ten years of his life have been that of a hardened criminal. Curiously, however, Hamilton presents a different background from many defendants who come before

8

this Court. He was born into a life of opportunity and privilege. (PSR ¶¶172-73). Raised by two loving and supportive parents (*Id.*), he received his high school diploma and the chance to earn a college degree at three separate universities. (*Id.* ¶¶ 186-88). Inexplicably, however, time after time, Hamilton has chosen a life of violence rather than productivity.

Even the judicial system gave Hamilton a second chance. At the age of 14, following an acquittal for murder, Hamilton had the opportunity to mend his ways and start anew. He rebuffed this chance at change, however, and chose instead to escalate his involvement in gang life by committing another murder and ordering his underlings to commit still more violence. (R. 194: SS Ind., counts 1-5, Overt Acts 12-15, 17). Even his allied gang's indictment and convictions for racketeering did not dissuade Hamilton from gang life. (Case No. 14-20119; *United States v. Ramiah Jefferson, et al.*). Instead, he continued to pursue and conceal the life of crime he was not yet ready to surrender. (R. 194: SS Ind.; ROI-218, footnote 1). And it's these choices that bring him before the Court today, with a sea of victims in his past.

In fact, without Hamilton, the Rollin 60s might never have come to Detroit. The murders, assaults, carjackings, armed robberies and drug

trafficking committed by the Rollin 60s tie directly to Hamilton, his leadership, and his propensity for violence and destruction. The significance of the crimes he brought to bear on this community cannot be overstated. That said, in lieu of a life sentence, the government has elected to offer the defendant a 35-year sentence with the hope that one day he will be able to repay a portion of the debt to society he has accrued over the course of ten years.

### B.) 18 U.S.C. §3553(a)(2)(A) & (B): PROMOTING RESPECT FOR THE LAW, PROVIDING JUST PUNISHMENT AND DETERRENCE.

If history is any indication, Hamilton is unlikely to relinquish his appetite for crime and violence—even while in custody. So while deterrence is a worthy consideration at sentencing, it may be futile for Hamilton. Even since entering his guilty plea and agreeing to a reduced sentence in this matter, Hamilton is veering off course yet again. This time rejecting the advice of reputable lawyers in order to file an untimely *pro se* brief in which he argues (mistakenly), that the indictment against him was unlawful. (R. 506: Hamilton pro se mot., 3991).

Though Hamilton's waning lack of responsibility offers little promise that a sentence of 35 years will deter him from committing crimes in the future, it is the government's hope that this sentence will

10

discourage others from following in his footsteps. The Court should impose a 35-year sentence in order to protect the public, provide the necessary punishment for Hamilton, and discourage others from committing similar criminal conduct.

## Conclusion

The Court should sentence Hamilton to 420 months' imprisonment.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

/s/ Eaton P. Brown
EATON P. BROWN
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9184
Email: eaton.brown@usdoj.gov

Dated: January 8, 2018

Certificate of Service

I certify that on January 8, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

> Mark Kriger, Attorney for Defendant
> N.C. Deday Larene, Attorney for Defendant

/s/ Eaton P. Brown
EATON P. BROWN
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9184
Email: eaton.brown@usdoj.gov